[Civ. No. 4610.  First Appellate District, Division Two.—September 18, 1923.]

## ARROW GARAGE COMPANY (a Corporation), Respondent, v. J. KIKUGAWA, Appellant.

[1] AGENCY — REPAIR OF AUTOMOBILE — RECOVERY FOR MATERIAL AND LABOR—FINDING—EVIDENCE.—In this action to recover for labor and material used in the repair of defendant's automobile, the evidence was sufficient to support the implied finding of the agency of defendant's son to contract for the defendant with plaintiff for the repair of the automobile.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

D. A. Knapp for Appellant.

H. H. Linney for Respondent.

LANGDON, P. J.—This appeal is by the defendant from a judgment against him for $300 in an action to recover for labor and material used in the repair of defendant's automobile at the special instance and request of defendant. The contract for the repairs was made with the plaintiff by the son of the defendant and the court has found that the labor and materials were of the actual and reasonable value of $300. The only question presented is as to the agency of the defendant's son, appellant contending that the facts appearing in the record fail to establish either an actual or ostensible agency or to show a ratification of an unauthorized act.

It appears that defendant's son, Charles, was entrusted with the entire use, management, operation, and control of the automobile in question; that he was authorized to engage storage for it and to purchase gasoline and oil, all of which he did at the garage of the plaintiff. For several

---

1. Authority of child to bind parent by contracts other than those for necessaries, note, 39 L. R. A. (N. S.) 881.

months defendant paid the bills for these items, as con-
tracted for by Charles, without objection. During this
period Charles had windshields placed upon the car by the
plaintiff and it was understood that they were to be re-
moved without charge if the defendant did not like them.
The defendant visited the garage and approved of the wind-
shields and paid the bill for them. Some time before No-
vember 11, 1921, plaintiff had called Charles' attention to
the fact that the engine in the automobile required repair-
ing. With reference to this matter Mr. Brown, secretary
of the plaintiff company, testified: ''On the night of No-
vember 10th, the son, Charles Kikugawa, came in with a
pronounced knock in his motor, which from the outside
matter I analyzed as being the connecting rod bearings,
and was instructed by him to repair it. That work would
have amounted to about $20. The next morning our mechanic
started in on it; removed the crank pan, which was prob-
ably an hour and a half's work, and made an internal ex-
amination of the motor and saw that the main bearing sys-
tem was completely gone. I called up Charles Kikugawa,
brought him over, got him on his back under the car, and
showed him the condition. I told him that the work would
go from $200 up—would probably be between $250 and
$300. I advised him he could probably get it cheaper at
the Cleveland agency than he could with us and asked him,
told him before we would do any more work on the car,
for him to ask his father what we should do. About two or
three hours afterward he rang up and said: 'My father says
to go ahead.' ''

The defendant testified that he did not go to the garage
to make the arrangements for the repair of the car ''be-
cause in the case, in the instance of the windshield I could
see it and I could understand but the repairing of the en-
gine, why I would be absolutely in the dark and there was
no use of my going and I took the word of Charlie what
the garage people told Charlie.''

The difficulty arises because, according to the testimony,
Charles did not correctly report to his father the estimated
cost of the work. Upon this matter the father testified:
''As Charlie told me that the Arrow Garage people said
if it was repaired now it would cost only thirty or forty

dollars but if he ran it without repairing it now the repair bill would amount to over $100, and I thought it would be best to repair it now while the charge is small. So I told him it would be all right if it would cost only thirty to forty dollars. Q. Did Charlie say anything more to you about it after that? A. I don't remember whether it was immediately or not, but anyway some time after, Charlie told me the price quoted by the Arrow Garage was thirty or forty dollars up to eighty dollars. Q. What did you say about that? A. I said it was all right since they have started repairing it, it was all right.''

[1] The decision of the only question involved upon this appeal doesn't require a lengthy discussion. The facts hereinbefore recited justify the implied finding of the agency of Charles to contract for the defendant in this matter. If he misinformed the defendant it is the defendant alone who is responsible for entrusting to him the matter of contracting for the repair of the automobile.

Although this conclusion disposes of the appeal, it is relevant in arriving at the merits of the action, to consider also the facts with relation to ratification. It appears from the record that after the work upon the automobile was completed the plaintiff furnished to Charles a bill for its services. Charles testified that he took the bill home to his father; that the father said he would not pay it, but this fact was not communicated to plaintiff. On the contrary, Mr. Brown, plaintiff's representative, called at the home of defendant, who was absent, and was told by Charles that the father would probably send a check for the amount. The statement of account was rendered on December 22d. On that date Charles, as the agent of the defendant, took the automobile out of the garage and later brought it back. About December 27th he again took the automobile out and later returned it to the garage. The car was accepted without any criticism of the charge for repairs and was run for two weeks by Charles. On January 6th defendant had the automobile removed from the garage of plaintiff and after such removal refused to pay the bill for the repair work. These facts are not without legal significance. The defendant accepted for a considerable time, without protest or objection, the benefit of the contract made on his behalf by his

son and he is at present enjoying those benefits while refusing to pay therefor.

The judgment is affirmed.

Noarse, J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 15, 1923.